IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOCELYN ROUSE, *an adult individual*, and ROAC, INC., *a Pennsylvania Corporation*, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PITTSBURGH, and MAURA KENNEDY, *Director of the City of Pittsburgh's Department of Permits, Licenses, and Inspections*, <br><br> Defendants. | Civil Action No. 16-608 <br> Hon. Nora Barry Fischer |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

This action involves allegations by Plaintiffs that Defendants constructively debarred them from future contracts without following the required procedures and committed a breach of contract by inducing them to submit bids without awarding the projects. In their Complaint, Plaintiffs assert claims against Defendants the City of Pittsburgh ("the City") and Maura Kennedy for violation of 42 U.S.C. § 1983 and breach of contract. (Docket No. 1-2). Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. (Docket Nos. 16, 42). After careful consideration of the parties' positions and having evaluated all of the evidence in light of the appropriate standard governing motions for summary judgment, and for the following reasons, Defendants' Motion for Summary Judgment will be GRANTED, and Plaintiffs' Motion for Summary Judgment will be DENIED.

### II. FACTUAL BACKGROUND

The following facts are not contested. Plaintiff ROAC, Inc. ("ROAC") is a certified minority and woman owned business. (Docket No. 18 at ¶ 1; Docket No. 25 at ¶ 1). The City

recognizes ROAC's license to perform demolition work. (Docket No. 18 at ¶ 2; Docket No. 25 at ¶ 2). On November 6, 2015, ROAC "'negligently tore down the wrong house.'" (Docket No. 18 at ¶ 3 (quoting Defendants' Answer, Docket No. 4 at ¶ 42); Docket No. 25 at ¶ 3). Following this incident, and an episode wherein Defendants contend that an ROAC employee directed foul and abusive language at a neighbor, "'the City determined that ROAC could no longer be deemed a responsible bidder for demolition work.'" (*See* Docket No. 18 at ¶ 4 (quoting Defendants' Answer, Docket No. 4 at ¶ 42); Docket No. 25 at ¶ 4).

On January 27, 2016, Rouse contacted Stephanie Dorman, the City's Procurement Coordinator, and requested "a detailed list of how all the contractors" bid for a demolition award." (Docket No. 40 at ¶ 9; Docket No. 51 at ¶ 9; *see also* Docket No. 41-5 at 3). Dorman forwarded Rouses's e-mail to Jennifer Olzinger, Mark Mariana, and Brian Ralston and stated, "How should i [sic] respond to requests like this? FYI . . . ROAC." (Docket No. 40 at ¶ 10; Docket No. 51 at ¶ 10; *see also* Docket No. 41-5 at 3). In response to Rouses's e-mail, Dorman advised Rouse to visit the City's website and follow the steps for Right to Know. (Docket No. 40 at ¶ 11; Docket No. 51 at ¶ 11; *see also* Docket No. 41-5 at 1). On February 22, 2016, Dorman sent the following e-mail to Mariana and Ralston:

> Hi Mark, Brian,
> The lovely Jocelyn [Rouse] has called me yet again[.]
> A) [S]he has not received her packet (RTK) from the previous bid. She said she spoke to you[,] Brian[,] and you said it was in the mail last Wednesday.
> B) She said she was not on the invitation for bid again. We need to let her know ROAC is not a responsible bidder. We need to brainstorm the language and maybe run it pass [sic] legal if necessary.

(Docket No. 40 at ¶ 14; Docket No. 51 at ¶ 14; *see also* Docket No. 41-6 at 1). Jennifer Olzinger, the Assistant Director-Procurement Manager, responded:

> The City got her RTKL request — Sam got notice late on Friday. They will respond to her so don't respond to her directly on that topic. Please just refer her

to the policy online and tell her to follow upt [sic] with that office if she asks again.
Stephanie — as discussed on "B", let's draft something for review.

(Docket No. 40 at ¶ 15; Docket No. 51 at ¶ 15; *see also* Docket No. 41-6 at 1). By e-mail, Dorman informed Rouse to contact Mariani or Ralston and provided their e-mail addresses. (Docket No. 40 at ¶ 16; Docket No. 51 at ¶ 16; *see also* Docket No. 41-7). Rouse sent an e-mail to Ralston on February 23, 2016. (Docket No. 40 at ¶ 18; Docket No. 51 at ¶ 18; *see also* Docket No. 41-9).

On February 29, 2016, Kennedy forwarded a letter from ROAC to City representatives. (Docket No. 40 at ¶ 20; Docket No. 51 at ¶ 20; *see also* Docket No. 41-10 at 2-3). In response, Sam Ashbaugh, the Director of the City's Office of Management and Budget stated:

> [D]id PLI ever document to us this vendor's performance? I know it has been spoken of, but I wasn't sure if the dept actually documented issues with this vendor.
> Stephanie — per the letter, can you provide copies of all correspondence with this vendor? We need to be careful about what if anything is communicated to vendors since this is a very controversial issue, especially with the Controller now questioning how the process has been changed even though it was approved by the law dept.
> Since PLI made the determination and has had all communication with the vendor, I don't see this being an issue for us to resolve. Going forward[,] I want to be involved in all discussions with PLI contracts and procurement issues . . . this is going to be an issue on several fronts due to the nature of personalities involved.

(Docket No. 40 at ¶¶ 21, 23-24; Docket No. 51 at ¶¶ 21, 23-24; *see also* Docket No. 41-10 at 2). Olzinger replied:

> No, they never sent us the vendor performance form that I can see. She had said they were completing them — but we've never seen a copy of any.
> At least I haven't — I will let Stephanie speak for herself, but I'm sure she would have put it out in the folder if she got one.

(Docket No. 40 at ¶ 22; Docket No. 51 at ¶ 22; *see also* Docket No. 41-10 at 1). In response, Dorman stated:

3

> You are correct. I sent Maura the Vendor Performance sheet in November but I haven't seen her return one. I haven't had any communications with ROAC except to send out phone quote invitation and RTKL information. She usually calls me and I direct her to Mark or Brian in PLI.

(Docket No. 40 at ¶ 22; Docket No. 51 at ¶ 22; *see also* Docket No. 41-10 at 1).

On March 10, 2016, Rouse e-mailed Kennedy, and copied Ralston and Mariani, the following:

> I am following up on my very brief conversation with you on Tuesday, March 8th. I had made an appointment with your assistant on the morning of the 8th at 8:30 am to speak with you regarding ROAC's status and perhaps seeing fit to reverse this status given the evidence that I produced in our support (the letter from Mr. Werkmeister which absolutely corroborates my own letter of February 29th giving ROAC's side of the story) as well as ROAC's 15 year history with being a contractor for the city doing exceptional work and having no prior incidents. Your assistant gave me a 4:00 pm appointment on the 8th. When I questioned whether the office was closed at that time, your assistant said that you would be in the office until at least 4:30 pm and that it was a good appointment. However, when I showed up at 4 pm that day, you would not see me except to say that there was a letter forthcoming to me from the Law Department. When I asked when I would be getting the letter, you did not know but only said that you had seen a rough copy of the letter that morning. When I asked whether you or your assistant could have called me to cancel the appointment, that I would have preferred not to have fought rush hour traffic to make an appointment that I can only assume you knew well before 4 pm that you would not keep, you said you were sorry.
> At this time of writing this email, I still have not received this Law Department letter. As this situation proceeds, I am just dumbfounded at why at no point you could not have informed me of the problem of our status and what, if anything, I could do to correct it and proceed as we have for years. There seems to be no one to whom I can speak and when I try to follow paths of seemingly proper procedure, I am met with walls. I know I do not have a relationship with you, that our brief words on the 8th was literally the first time I had ever spoken/met you. However, I have worked for the city for years, with the inspectors and your predecessor[,] Paul Loy. I just wish to be heard and, just to be clear, it was Brian Ralston who told my brother Kurt to speak with you when we first learned of our status. Frankly, it did not occur to me that this would be an impossibility. I still hope this situation can be favorably remedied and soon.

(Docket No. 40 at ¶¶ 26-27; Docket No. 51 at ¶¶ 26-27; *see also* Docket No. 41-11).

The City sent a letter to ROAC regarding its recent bids on April 12, 2016. (Docket No.

4

18 at ¶¶ 6-7; Docket No. 25 at ¶¶ 6-7; Docket No. 40 at ¶ 28; Docket No. 51 at ¶ 28; *see also* Docket No. 19-1). Prior to receiving written notification of the City's decision, ROAC had submitted bids to the City, some of which were lower than the competing bids submitted by the winning bidders. (Docket No. 18 at ¶ 8; Docket No. 25 at ¶ 8; Docket No. 40 at ¶¶ 1-8; Docket No. 51 at ¶¶ 1-8). However, "'after ROAC was no longer deemed a responsible bidder, the City has not entered into any demolition contracts with ROAC.'" (Docket No. 18 at ¶ 8 (quoting Defendants' Answer, Docket No. 4 at ¶ 45); Docket No. 25 at ¶ 8).

In its letter dated April 12, 2016, the City stated, "Until and unless ROAC demonstrates — as determined by the City as per the discretion the law provides it — the affirmative steps that have been taken to correct its attention to essential details and to prevent the kind of mistake it made last November, the City is not legally permitted to award bids to ROAC." (Docket No. 18 at ¶ 9; Docket No. 25 at ¶ 9; *see also* Docket No. 19-1 at 3). In response to ROAC's contention that the City had debarred ROAC from contracting with the City, the City stated:

> [P]lease be aware that the City has not debarred ROAC but has merely deemed it to be non-responsible. The City has not indicated, in writing or verbally, to ROAC that it has been debarred, as is required by City Code § 161.22. Furthermore, debarment is not applicable in this scenario because ROAC has not been convicted or otherwise adjudicated for its performance of a demolition contact or any other particular conduct. City Code § 161.22 requires certain procedural steps to occur in a debarment scenario which have not occurred here. If ROAC had been debarred from bidding then it would not be permitted to bid on any contract during recent months. However, ROAC has been able to bid on several demolition contracts but it hasn't received any such bid awards and will not receive any unless and until it demonstrates to the City that it is responsible (i.e. that it has taken sufficient action to prevent the kind of mistake it made with regard to 741 Excelsior St.).

(Docket No. 18 at ¶ 10; Docket No. 25 at ¶ 10; *see also* Docket No. 19-1 at 3). The City has admitted that because it never made a determination to debar ROAC, it did not deem the procedures for debarment to apply. (Docket No. 18 at ¶ 12; Docket No. 25 at ¶ 12).

In February 2016, ROAC demolished a house at 102 Jacob Street pursuant to a City contract that was awarded to ROAC on July 18, 2015. (Docket No. 44 at ¶ 2; Docket No. 48 at ¶ 2; *see also* Docket No. 4 at ¶ 8). The contract required a number of inspections to be conducted and passed as conditions precedent to payment to ROAC. (Docket No. 44 at ¶ 3; Docket No. 48 at ¶ 3). These inspections included a "void" inspection, a "grade" inspection, a plumbing/sewer inspection, and an inspection by the City's Controller's office. (Docket No. 44 at ¶ 4; Docket No. 48 at ¶ 4). Some of the inspections were to be performed by the Department of Permits, Licenses, and Inspections ("DPLI"); some of the inspections were to be conducted by a department not under DPLI's control, such as the City Controller's office; and some of the inspections were to be performed by a non-City entity, such as the Allegheny County Health Department. (Docket No. 44 at ¶ 5; Docket No. 48 at ¶ 5). ROAC initially passed the inspections performed by DPLI and the non-City entities. (Docket No. 44 at ¶ 6; Docket No. 48 at ¶ 6). On April 20, 2016, the City advised ROAC that corrective action was needed, as two holes opened up within one to two weeks after the lot had been graded. (Docket No. 44 at ¶ 8; Docket No. 48 at ¶ 8; Docket No. 49-4). On May 4, 2016, the City issued a check to ROAC as payment for services rendered. (Docket No. 44 at ¶ 10; Docket No. 48 at ¶ 10).

### III. PROCEDURAL HISTORY

Plaintiffs commenced this action by filing their Complaint in the Court of Common Pleas of Allegheny County on April 8, 2016. (Docket No. 1-2). Defendants removed the case to this Court on May 13, 2016. (Docket No. 1). In their Complaint, Plaintiffs asserted claims against the City and Kennedy for breach of contract; violation of the Commonwealth Procurement Code, 62 Pa.C.S. § 103 *et seq.*; violation of Pennsylvania's Contractor and Subcontractor Payment Act, 73 P.S. § 501 *et seq.*; and violation of their due process rights, 42 U.S.C. § 1983. (Docket No. 1-

2).

Plaintiffs filed a Motion for Partial Summary Judgment on August 8, 2016. (Docket No. 16). After Plaintiffs' motion was fully briefed by the parties, (Docket Nos. 16, 17, 18, 19, 24, 25, 26, 27), the Court denied same, without prejudice, as premature, (Docket No. 28). Following the completion of discovery, Plaintiffs advised the Court that their Motion for Partial Summary Judgment was ripe for adjudication. (Docket Nos. 35, 36). On March 10, 2017, Plaintiffs filed a Supplemental Brief in Support of their Motion for Partial Summary Judgment, a Supplemental Concise Statement of Material Facts, and an appendix. (Docket Nos. 39, 40, 41). The same day, Defendants filed their own Motion for Summary Judgment, supporting brief, Concise Statement of Material Facts, and appendix. (Docket Nos. 42, 43, 44, 45). Defendants also filed a Supplemental Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment. (Docket No. 46). On March 24, 2017, Plaintiffs filed a Brief in Opposition to Defendants' Motion for Summary Judgment, a Reply to Defendants' Concise Statement of Material Facts, and an appendix. (Docket Nos. 47, 48, 49). The same day, Defendants filed a Reply Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment and a Response to Plaintiffs' Concise Statement of Material Facts. (Docket Nos. 50, 51).

The Court heard oral argument on April 13, 2017, at which time Plaintiffs' counsel orally moved to withdraw Counts I, II, and III from Plaintiffs' Complaint and to withdraw Rouse's individual claims as to Counts IV and VI. (Docket Nos. 54, 55). Defendants' counsel having consented, the Court ordered that Counts I, II, and III were withdrawn and dismissed, with prejudice, and that Rouse's individual claims as to Counts IV and VI were withdrawn and dismissed, with prejudice. (Docket No. 55).

## IV. LEGAL STANDARD

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citing *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). As to materiality, the relevant substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

## V. DISCUSSION

A. *Defendants' Motion for Summary Judgment*

In its motion for summary judgment, Defendants argue that they are entitled to summary judgment as to Plaintiffs' remaining claims for procedural due process, equal protection, and breach of contract, which the Court will address in turn.

1. Count IV: ROAC's Procedural Due Process Claim

a. ROAC's Standing

Defendants contend that ROAC lacks standing because "it does not have an absolute protected property right to continue being deemed a 'responsible' bidder under City Code, immune from any consequences following its negligent demolition of a house." (Docket No. 43 at 6). Defendants maintain that ROAC never acquired any enforceable rights as a bidder with respect to contracts that it was not awarded. (*Id.* at 7; *see also* Docket No. 52 at 2-4). In response, ROAC argues that it has standing because contractors have a property interest in not being arbitrarily debarred. (Docket No. 47 at 3).

The United States Court of Appeals for the Third Circuit has held:

> Although Pennsylvania's competitive bidding statutes require that public contracts be awarded to the lowest responsible bidder, 53 P.S. § 312(A); 73 P.S. § 1622, Pennsylvania courts have long held that such laws are for the benefit of the public only and do not give a low bidder standing to challenge a municipality's failure to award a contract in accordance with the statute. *See, e.g., R.S. Noonan, Inc. v. School Dist. of York*, 400 Pa. 391, 162 A.2d 623, 624-25 (Pa. 1960) (citing *Commonwealth ex rel. Snyder v. Mitchell*, 82 Pa. 343 (1876)); *J.P. Mascaro & Sons, Inc. v. Township of Bristol*, 95 Pa. Commw. 376, 505 A.2d 1071, 1074 (Pa. Cmwlth. 1986); *see also ARA Servs., Inc. v. School District of Phila.*, 590 F. Supp. 622, 629 (E.D. Pa. 1984) ("The existence of . . . a property interest [in the award of a municipal contract] cannot properly be derived from the regulations and specifications governing the procurement process in light of the Pennsylvania courts' long and consistent refusal to recognize such an interest."). In *R.S. Noonan*, for example, the Pennsylvania Supreme Court held that "a disappointed bidder . . . sustains no personal injury which entitles him to redress in court." 162 A.2d at 625.

*Indep. Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1178 (3d Cir. 1997). Relying upon well-established Pennsylvania law, the Third Circuit concluded that "one who bids on a public contract has no legitimate expectation of receiving it until the contract is actually awarded." *Id.* (citing *Highway Express Lines v. Winter*, 200 A.2d 300, 303 (Pa. 1964) ("By their bid [the unsuccessful bidders] proposed to contract for certain work; that bid was not accepted. It was a mere proposal that bound neither party, and as it was never consummated by a contract, the city acquired no right against the [bidders] nor they against the city.")). Because the plaintiff's bids were never accepted, the Third Circuit held that "it never acquired an enforceable right with respect to the contract being awarded" and that "[i]t, therefore, has not been deprived of a property interest that warrants procedural due process protection." *Id.*

Here, it is undisputed that "ROAC submitted bids to the City, but 'after ROAC was no longer deemed a responsible bidder, the City has not entered into any demolition contracts with ROAC.'" (Docket No. 18 at ¶ 8 (quoting Defendants' Answer, Docket No. 4 at ¶ 45); Docket No. 25 at ¶ 8). Accordingly, the Court finds that because ROAC's bids were not accepted by the City, "it never acquired an enforceable right with respect to the contract being awarded" and that "[i]t, therefore, has not been deprived of a property interest that warrants procedural due process protection." *Indep. Enters.*, 103 F.3d at 1178; *see also Marinkovic v. Battaglia*, No. 14-CV-49, 2016 U.S. Dist. LEXIS 88913, at *13 (W.D. Pa. July 8, 2016) (dismissing procedural due process claim because the plaintiff did not have a due process property interest in the bidding procedure); *Mun. Revenue Servs., Inc. v. McBlain*, No. 06-4749, 2007 U.S. Dist. LEXIS 20013, at *12 (E.D. Pa. Mar. 19, 2007) ("[U]nder Pennsylvania law a bidder on a government contract does not acquire an enforceable property right to the benefit of the contract until the bidder is awarded the contract."); *Labalokie v. Capitol Area Intermediate Unit*, 926 F. Supp. 503, 508

(M.D. Pa. 1996) ("It is settled law that there can be no property interest in obtaining future government contracts, and that suspension or debarment from bidding on such contracts only implicates a liberty interest if it is based upon charges of fraud or dishonesty."). Because ROAC lacks standing, the Court will grant Defendants' Motion for Summary Judgment as to Count IV.

    b.  Debarment

Even if ROAC had standing, the entry of summary judgment as to Count IV is required because ROAC's claim is not ripe. As Defendants argue, ROAC has contended that the City debarred it but did not avail itself of post-deprivation remedies. (Docket No. 43 at 7-8). Indeed, Plaintiffs state that that City sent a letter "[i]n response to ROAC's contention that the City had debarred ROAC from contracting with the City." (Docket No. 18 at ¶ 10; *see also* Docket No. 48 at ¶ 13 (wherein Plaintiffs state that "[i]t is admitted that Maura Kennedy, on behalf of the City and through DPLI, decided in November of 2016 that ROAC would not receive any new City contracts, i.e., that ROAC was debarred")).

Despite submitting that it has been debarred, ROAC did not invoke any of the City's procedures for addressing a contractor's contention that the debarment was improper. The Court finds meritless Plaintiffs' position that "there was nothing for ROAC to appeal" because "[t]his action was filed on April 8, 2016, 4 days before the City sent its April 12, 2016 letter informing ROAC why it did not receive past contracts for which it was the lowest bidder and that ROAC would no longer be receiving City contracts." (Docket No. 48 at ¶ 14). The Court also rejects Plaintiffs' assertion that the City is making a failure to exhaust argument that has been waived because the City did not include it as an affirmative defense in its Answer. (Docket No. 47 at 4). The City's argument is not related to a failure to exhaust administrative remedies. Indeed, well-settled law provides that "'[i]n order to state a claim for failure to provide due process, a plaintiff

must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.'" *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 423 (3d Cir. 2008) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). However, "[t]his requirement that a plaintiff avail itself of the processes available differs from the administrative exhaustion requirements that appear in other civil rights contexts" because "'exhaustion . . . is analytically distinct from the requirement that the harm alleged has occurred. . . . [A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Id.* (quoting *Alvin*, 227 F.3d at 116).

Here, it is undisputed that although ROAC received the City's letter more than one year ago, it did not engage in any of the remedies available to it in Section 161.22 of the City Code. *See* City Code tit. 1 § 166.22(e) (delineating procedures to follow with respect to debarment from bidding on and participating in city contracts). Thus, as the Third Circuit has held, the Court finds that "[ROAC's] failure to take advantage of that process means that it cannot claim a constitutional injury." *Elsmere Park Club, L.P.*, 542 F.3d at 423; *see also Chainey v. St.*, 523 F.3d 200, 222 (3d Cir. 2008) (upholding District Court reversal of jury verdict and holding that takings claim was not yet ripe to be heard in federal court because "Pennsylvania provides adequate process for plaintiffs to obtain just compensation" under its Eminent Domain Code); *S. Allegheny Pittsburgh Rest. Enters., LLC v. City of Pittsburgh*, No. 16-CV-1393, 2016 U.S. Dist. LEXIS 126180, at *27-31 (W.D. Pa. Sept. 16, 2016) (finding that the plaintiff's due process claims were not ripe for adjudication because it failed to invoke the procedures available to it to challenge the defendant's decision); *Williams v. City of Johnstown*, No. 15-144, 2016 U.S. Dist. LEXIS 34587, at *17-18 (W.D. Pa. Mar. 17, 2016) (explaining that the plaintiffs had failed "to

12

avail themselves of the administrative remedies available to them" and holding that "Plaintiffs' procedural due process claim must be dismissed because it is not ripe at this time"). Accordingly, even if ROAC had not lacked standing, the Court would grant Defendants' Motion for Summary Judgment as to Count IV.

    2.    Count V: ROAC's Equal Protection Claim

Defendants argue that they are entitled to summary judgment on ROAC's equal protection claim. (Docket No. 43 at 11-12). Specifically, Defendants contend that there is no evidence that they engaged in any discriminatory practices when awarding demolition contracts. (*Id.*; *see also* Docket No. 52 at 5). In response, ROAC asserts that there is evidence establishing that the City was discriminating against Plaintiffs. (Docket No. 47 at 7 (citing 41-9; 41-10)).

The Equal Protection Clause of the Fourteenth Amendment prohibits a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST., AMEND. XIV § 1. This constitutional provision "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "The primary purpose of the Equal Protection Clause is 'to secure every person within [a] State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by [the] express terms of a statute or by its improper execution through duly constituted agents.'" *Whittaker v. County of Lawrence*, 674 F. Supp. 2d 668, 691 (W.D. Pa. 2009) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). An equal protection claim may be brought as a "class of one" claim, where a plaintiff must prove that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. Pa. 2006). Alternatively, a plaintiff may establish a claim of selective

13

enforcement by demonstrating that: (1) it was treated differently from other similarly situated individuals; and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)).

Here, ROAC has failed to establish a "class of one" claim or a claim of selective enforcement claim because it has not proffered any evidence from which a rational factfinder could conclude that it was treated differently from others similarly situated. Indeed, there is *no* evidence concerning any entities similarly situated to ROAC that received more favorable treatment from Defendants. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'") (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Rather, ROAC simply asserts that Defendants are not entitled to summary judgment on the basis of three exhibits, namely, e-mail communications and a letter. (*See* Docket No. 47 at 7 (citing 41-9; 41-10; 49-2)). The first exhibit is an e-mail that Rouse sent to Ralston and Mariani on February 23, 2016, wherein she stated:

> Brian,
> I spoke to you yesterday and you told me there was a current demolition bid out due sometime next week and to contact Stephanie Dorman to have it sent to me because you did not know why it was not sent to me. After repeated back and forth with Stephanie, she sent me an email that I should contact you or Mark Mariani because she sent the list out to those contractors to whom she was directed to send it.
> I would like to get to the bottom of this asap as this is the 2nd demolition bid on [sic] a row I was specifically left off and which I had to specifically request. And, obviously, I'd like to receive the bid.

(Docket No. 41-9). In the second exhibit, which is detailed more fully above, Kennedy forwarded a letter from ROAC to City representatives on February 29, 2016. (Docket No. 41-10

at 2-3). In support of its argument that summary judgment should not be granted, ROAC replies upon Ashbaugh's response, wherein he stated:

> [D]id PLI ever document to us this vendor's performance? I know it has been spoken of, but I wasn't sure if the dept actually documented issues with this vendor.
> Stephanie — per the letter, can you provide copies of all correspondence with this vendor? We need to be careful about what if anything is communicated to vendors since this is a very controversial issue, especially with the Controller now questioning how the process has been changed even though it was approved by the law dept.
> Since PLI made the determination and has had all communication with the vendor, I don't see this being an issue for us to resolve. Going forward[,] I want to be involved in all discussions with PLI contracts and procurement issues . . . this is going to be an issue on several fronts due to the nature of personalities involved.

(*Id.* at 2). ROAC argues that Ashbaugh's statements that "this is a very controversial issue" and "this is going to be an issue on several fronts due to the nature of personalities involved" demonstrate that Defendants are not entitled to summary judgment. (Docket No. 47 at 7). In support thereof, ROAC cites to a letter dated March 4, 2016, wherein David Werkmeister stated:

> To Whom It May Concern:
> My name is David Werkmeister. My girlfriend and I have a rent to own contract for 743 Excelsior Street and I was there when Roac, Inc. tore down 741 Excelsior Street back in November. From the time the demo crew came on the street to the time they left, the man who rents 739 Excelsior Street, the property on the other side of the house that was demolished, was nasty and verbally abusive. He called the police on the crew so many times for absolutely nothing over the week they were there that I lost count and used the N word nonstop to bait the crew, that were all black. I thought the crew really tried their [sic] best not to engage him but his cussing and foul names went on and on. His behavior was crazy since the house they tore down was a fire hazard and a rat trap and the owner of the house [who] lives out town did nothing for years to keep up the property. Parts of the roof and chimney were threatening to fall on my house and it really needed to come down. I was very happy about the demolition and thought the crew did a great job. The only reason that I came up with for this guy's behavior, besides him being a bigot and a jerk, was that as a renter of 739, it was no skin off his back to cause trouble. His house is completely over run [sic] with weeds, the yard actually looked no better than the yard of 741 Excelsior before it was torn down. Last summer, he didn't mow his grass once and the city cited him several times for it.

15

(Docket No. 49-2). ROAC maintains that Defendants are not entitled to summary judgment because although "the City pled that the other reason it refused to award new contracts to ROAC was because its employees used crude language on a job towards a neighbor," Werkmeister's letter proves that "the neighbor at issue had used racially charged language against ROAC's crew, all of whom were African-American." (Docket No. 47 at 7).

As set forth above, none of the evidence to which ROAC has cited — and none of the other evidence before the Court — establishes that ROAC was treated differently from others similarly situated. Indeed, as detailed above, there is no evidence related to any other entities, let alone to same receiving more favorable treatment from the City. Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Count V. *See, e.g.*, *Swinka Realty Invs., LLC v. Lackawanna Cnty. Tax Claim Bureau*, No. 13-CV-764, 2016 U.S. Dist. LEXIS 86328, at *37 (M.D. Pa. July 1, 2016) ("Swinka fails to identify any persons who bid on property at the September 20, 2010 tax sale (or any other tax sale conducted by the Defendants); let alone the supposed differential treatment they received. At bottom, Swinka has not and cannot demonstrate how it was treated differently than if the bidder under those circumstances had been someone else.").

3. Kennedy's Qualified Immunity

Defendants alternatively argue that Kennedy, as the Director of DPLI, is entitled to qualified immunity as to ROAC's due process claim. (Docket No. 43 at 10-11; Docket No. 52 at 4-5). In response, Plaintiffs assert that Kennedy is not entitled to qualified immunity because ROAC has alleged that she violated its due process and equal protection rights. (Docket No. 47 at 5-6).

The Third Circuit has held that "[t]he doctrine of qualified immunity protects government

officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine whether qualified immunity applies to a particular claim, this Court must engage in a two-pronged analysis to decide: "(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was clearly established at the time of the defendant's actions." *Id.*

As discussed above, ROAC's procedural due process claim must be dismissed for ROAC's lack of standing and for its failure to invoke any of the City's procedures for addressing a contractor's contention that the debarment was improper. Thus, the Court cannot conclude that ROAC has established the violation of a constitutional right or that the right was clearly established at the time of Kennedy's actions. Accordingly, the Court finds that Kennedy, as a municipal officer, is entitled to qualified immunity. *See Goodwin v. Conway*, 836 F.3d 321, 326 (3d Cir. 2016) ("Public officials are entitled to qualified immunity unless their conduct violated a clearly established constitutional right.").

4. Count VI: ROAC's Breach of Contract Claim

Defendants argue that they are entitled to summary judgment on ROAC's breach of contract claim. (Docket No. 43 at 12). In response, ROAC contends that it has produced evidence of a claim for promissory estoppel. (Docket No. 47 at 7-8). In reply, Defendants assert that their exercise of discretion does not give rise to ROAC's newly introduced claim of promissory estoppel. (Docket No. 52 at 5-6).

Under Pennsylvania law, a claim for breach of contract has three elements: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract and (3) resultant damages.'" *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). The essential elements of a contract will be found to exist where: (1) "both parties have manifested an intent to be bound by the terms of the agreement," (2) "the terms are sufficiently definite," and (3) "whether consideration existed." *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. Ct. 1995). The agreement shall be considered valid and binding if all three elements exist. *Id.*

In its breach of contract claim, ROAC alleges that the City induced it to bid on contracts and then refused to award same. (Docket No. 1-2 at ¶ 84). As Defendants argue, "[a] party cannot be held liable for breach of contract for a contract that never existed." (Docket No. 43 at 12). Indeed, ROAC states that "[i]t is believed therefore it is averred that ROAC was the lowest responsible bidder on at least 12 occasions over the past several months, but *did not receive the contract* from the City." (Docket No. 1-2 at ¶ 85 (emphasis added)). As discussed above, a claim for breach of contract requires "'the existence of a contract.'" *Kaymark*, 783 F.3d at 182 (quoting *Omicron Sys., Inc.*, 860 A.2d at 564). Because ROAC cannot prove the existence of any contracts, the Court must grant Defendants' Motion for Summary Judgment as to Count VI.

To the extent that ROAC now attempts to recast its breach of contract claim as a promissory estoppel claim, the Court notes that to maintain a promissory estoppel action under Pennsylvania law, the aggrieved party must show that: (1) "'the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee;'" (2) "'the promisee actually took action or refrained from taking action in reliance on the promise;'" and (3) "'injustice can be avoided only by enforcing the promise.'" *Johnson v. Dunkin' Donuts Franchising LLC*, No. 11-CV-1117, 2014 U.S. Dist. LEXIS 88446, at *47

(W.D. Pa. June 30, 2014) (quoting *Guerra v. Redevelopment Auth. of City of Phila.*, 27 A.3d 1284, 1292 (Pa. Super. Ct. 2011)).

Count VI of the Complaint makes no mention of promissory estoppel or of the elements required to set forth a claim for promissory estoppel. (*See* Docket No. 1-2 at ¶¶ 79-87). Regardless, the Court's established deadline for filing motions to amend pleadings (i.e., July 16, 2016) has long since passed, as has the extended deadline for the completion of fact discovery (i.e., February 13, 2017), without Plaintiffs formally seeking leave to amend or attempting to establish "good cause" under Rule 16 which is required for the Court to permit such amendment. *See Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010) ("[O]nce the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b) demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading."); *see also Karlo v. Pittsburgh Glass Works, LLC*, No. 10-CV-1283, 2011 U.S. Dist. LEXIS 125667, 2011 WL 5170445, at *8 (W.D. Pa. Oct. 31, 2011) (same). Although ROAC has not formally requested an opportunity to amend the pleadings, the Court finds that good cause does not exist, as ROAC had sufficient access to information to assert its claim earlier in this litigation. *See, e.g., Graham*, 271 F.R.D. at 118; *Gaston v. Sodexo*, No. 14-CV-76, 2014 U.S. Dist. LEXIS 181339 (W.D. Pa. Jun. 25, 2014); *McWreath v. Range Res. - Appalachia, LLC*, 81 F. Supp. 3d 448, 472-73 (W.D. Pa. 2015); *Karlo*, 2011 U.S. Dist. LEXIS 125667, at *10-14. Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Count VI.

B.    *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs move for summary judgment as to ROAC's procedural due process claim alleged in Count IV of the Complaint. As set forth in extensive detail above, ROAC cannot

prevail on its procedural due process claim. Accordingly, Plaintiffs' motion will be denied.

## VI. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Partial Summary Judgment, (Docket No. 16), is DENIED, and Defendants' Motion for Summary Judgment, (Docket No. 42), is GRANTED. An appropriate Order follows.


*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Dated: June 21, 2017

cc/ecf: All counsel of record.